ILLINOIS CENTRAL RAILROAD CO. *v.* J. M. DANIELS.

RAILROADS.   *Personal injuries.   Action by employee.   Improper use of appliances.*

A railroad company is not liable in damages to one of its employees where the personal injury complained of resulted from his putting one of the appliances supplied by it to a use for which it was not intended, in an improper manner.

FROM the circuit court of Holmes county.

HON. C. H. CAMPBELL, Judge.

This was an action for damages, brought by J. M. Daniels, a conductor and foreman of a construction train, for personal injuries sustained by him, and alleged to have been caused by the failure of the defendant railroad company to provide suitable and safe cars for the transportation of earth, gravel and other materials necessary for the repairing of its roadway, and its failure to have such cars periodically inspected by skilled mechanics, to ascertain if they were in suitable condition for safe use, and to send such as were not to the shops for repairs.

The declaration alleges that the cars supplied to the plaintiff were rotten and unsafe, and that their condition was known, or could have been, to the mechanics, servants of defendant, whose duty it was to inspect and repair the same, and that, in consequence of such negligence, the plaintiff was permanently injured by a cable tearing out of the rotten sill in the side of one of said cars while unloading dirt thereon, etc.

The defendant plead the general issue, and also plead the contributory negligence of the plaintiff "in attempting to load a cable by attaching it to the engine, and then starting the engine, when it caught on a stump, and produced a tension against the sill of a car that was not intended to be used in that way, and which broke said sill, and allowed said cable to fly outward, and strike and break the leg of plaintiff, who was carelessly standing too near, and who carelessly and negligently ordered and directed said unusual and unexpected way of loading said cable."

To this plea, plaintiff filed two replications, one being a general traverse, and the other denying contributory negligence, and alleging that he was using ordinary care and diligence in the discharge of his duties at the time he was injured.

The opinion states the evidence. The court refused to grant a peremptory instruction in favor of the defendant. It granted the second, third and fourth instructions asked by the defendant, but modified the same, against defendants' objection, by inserting in them the following words, respectively: In the second, "And not from rotten or defective sills;" in the third, "And not because of the defect or rottenness of the sill of the car;" and in the fourth, "Not on account of being rotten or defective."

As modified, these instructions are as follows: (2) "The court instructs the jury that if they believe, from the evidence, that the plaintiff was in full control of the work train and was at liberty to load the cable as he saw fit, and that in doing so he put the sill of the cars and the stanchions thereon to a strain

that was not intended by the railroad company, and that the plaintiff was hurt by the sills and stanchions, either or both, giving way under such strain, and not from rotten or defective sills, they will find for the defendant.'' (3) '' The court instructs the jury, that if they believe, from the evidence, that the sill and stanchions would have guided the plow, if the cable had been pulled through shives attached to the sides of the cars on the long or outside of the curve, and that the plaintiff caused the cable to be pulled by two engines against the sills and stanchions from a fulcrum in the water on the inside of the curve, and that the sill and stanchions were not constructed by the railroad company, nor intended by the company, to be subjected to such strain, and that the plaintiff was hurt by the giving way of the still and stanchions, either or both, and not because of the defect or rottenness of the sill of the car, under such circumstances they will find for the defendant.'' (4) '' That if the evidence shows that the stanchions on the sides of the cars were for the purpose of guiding the plows, and that plaintiff, Daniels, used or caused to be used said stanchions in pulling the cable against a stump, or other obstruction in the water, and, in doing so, put a greater strain on them than they could bear, and they gave way, not on account of being rotten or defective, and he, Daniels, was struck and injured by the cable on account of the giving way of such stanchions, they will find for the defendant.''

The jury found for the plaintiff, awarding him $1,800 damages. A motion for a new trial was overruled and the defendant appealed.

*Mayes & Harris,* for the appellant.

The defendant was entitled to the peremptory instruction asked. It had furnished appliances that were safe for the purpose for which they were intended, and to which their use should be confined, and it is not responsible to a servant who puts them to uses for which they were never intended, because

they turned out to be unfit for such unintended use. The fact that the sill and stanchion were not able to stand the immense strain put upon them by the plaintiff, did not constitute a cause of action against the defendant, because, *non constat*, the sill was perfectly safe and suitable for the use for which the defendant intended it, and for which it was placed in the plaintiff's hands. The plaintiff was given reasonably safe and suitable machinery and appliances for loading, carrying and unloading dirt. He was not employed by the defendant to pull stumps, and when he undertook to pull stumps with such appliances, and they turned out to be unfit therefor, the company is not liable. *Felch* v. *Allen*, 98 Mass., 572.

The plaintiff himself gives a statement of the character of the work in which he was engaged, and for which the machinery and cars placed in his hands were intended. There is not a suggestion anywhere in the record that, in the usual course of business, such an emergency as the one that did arise would arise, and that the stanchion and sill could not be relied on to protect the plaintiff from injury. The whole occurrence was extraordinary and unprecedented, and there is not a hint or suggestion in the record that, for the legitimate purpose for which the cars were provided, they were not perfectly safe and suitable. It is argued that an inspection of the cars was necessary to provide against the contingency that arose. All of the evidence goes to show that, under ordinary inspection, the defect alleged to exist would not have been seen. The plaintiff himself says that he had been using this particular train of cars for over three months, and he had never discovered anything wrong about it. The other witnesses say that the defect was one which could not have been discovered by sounding the sill. There is really no evidence that an inspection of the cars was necessary for the purpose for which they were intended in their ordinary and legitimate use, nor does the evidence show that they were at all unfit for that use. And, besides, it is impossible to say that the injury would not have happened with the

strongest and best sill, in view of the great tension put upon
the cable.    There was no negligence on the part of the defend-
ant, within the accepted meaning of that term.    16 Am. &
Eng. Enc. L., p. 389.    The second, third and fourth instruc-
tions asked by the defendant should have been granted without
the modifications inserted therein.

*E. F. Noel*, for the appellee.

The evidence showed that appellee's injuries were caused by
the negligence of appellant in furnishing him a car with a rot-
ten sill, painted over, so that its dangerous nature was un-
known to appellee, and that it. was the duty of appellant to
provide inspectors charged with the investigation of such de-
fects in cars, and that the inspectors knew, or, by ordinary
care, would have known, the dangerous nature of the sill in
time to have avoided the injuries suffered by appellee.    It also
establishes the fact that the tearing out of the sill was due to
its being rotten, and that it was not due to its being subjected
to a greater strain than that for which it was intended, for this
proposition was submitted to the jury by appellant's third in-
struction.    If the sill had been sound, the accident would not
have occurred.    The witnesses on both sides testify to this.    It
would require as strong a sill to withstand the strain to which
it was subjected by the shives in pulling the plow through a
loaded car as was put upon it at the time of the accident.    3
Wood's Ry. L., pp. 1454, 1455, 1457, 1461, 1462, 1469,
1473, 1474, 1476, 1477; *Brann* v. *Railroad Co.*, 53 Iowa,
595; *Ford* v. *Railroad Co.*, 110 Mass., 240.

The liability of corporations, as defined by the authorities
above cited, was recognized by this court in the case of *White* v.
*Railway Co.*, 72 Miss., 12.    It is there held that "the law is
imperative in demanding that the railroad companies shall fur-
nish their employes engaged in the hazardous work of coupling
cars, safe and sufficient appliances.    2 Thomp. on Neg., p.
939."    It is also said that "superhuman accuracy of vision is not

expected of employees in detecting such defects in machinery.''
In *Railway Co.* v. *Fredricks*, 71 Ill., 295, the appliances were
held defective because the drawbar of the caboose was too short,
as a result of which the caboose and the cars came together,
producing injury; and the court says, that ''the machinery and
cars furnished for use should not be so unskillfully constructed
that the slightest indiscretion on the part of the operatives
would prove fatal.''

Under the circumstances and evidence in this cause, the
question of negligence was one for the jury, and not for the
court. 25 Am. & Eng. R. R. Cas., 334, note; *White* v. *Rail-
way Co.*, *supra*. The negligence of the defendant was the
proximate and not the remote cause of the injury. 16 Am. &
Eng. Enc. L., pp. 438, 439.

Argued orally by *J. B. Harris*, for the appellant, and by
*E. F. Noel*, for the appellee.

COOPER, C. J., delivered the opinion of the court.

Upon the showing made by the appellee himself, the court
should have instructed the jury to find for the defendant, for
the reason that the injury sustained by the plaintiff resulted
from his putting the appliance supplied by the defendant in an
improper manner to a use for which it was not intended.

A large plow, to be pulled along the tops of the cars, and
drawn by a wire cable attached to two engines, was used by
the company to unload earth from the cars. When the train
was at work around a curve, shives or ground wheels were used,
which were fixed to the inside of a car or cars between the plow
and the engines, and which gave direction to the force of the
cable. These shives were attached to the inner side of the car
which was on the outside of the curve, and were used, as the
plaintiff testified, only on the curves, when the cable could not
otherwise be kept in the middle of the car.

On the occasion of the injury, the cable had been used in

working around a sharp curve, and a part of it, forming the chord of the arc of the road, had become submerged in water adjacent to the roadbed to the depth of several feet. An effort had been made by the laborers to put the cable on the cars by hand, but because of the water this could not be done. In fact, the cable had lodged against a stump under the water, but this was not known to the plaintiff, who was in charge of the work. He directed the engines to move forward, for the purpose of lifting the cable from the water, having first put a part of it over the stanchions of one of the cars. As the engines moved forward, the plaintiff noticed that the cable began to tighten before it straightened from the plow to the engine, and, realizing that it was caught against some obstruction under the water, he gave the signal to the engineer to stop the engines, which was seasonably done; but before the engines could be stopped, the side of the car, over the stanchions of which the cable had been put, gave way, by reason of a rotten sill, which flew out, and it or the cable broke the plaintiff's leg in two places.

The plaintiff testified that the crew and train were under his control; that no instructions had been given him as to how the cable should be loaded on the cars, but that he had before loaded it in the same way, which was "a good way." The plaintiff further testified that if the sill of the car had been sound, it would have stood the strain on it, and the plow would have moved forward. Another witness for the plaintiff said that if the sill had been sound the plow would have moved forward or the car would have turned over.

A witness for the defendant testified that he afterwards examined the stump to which the cable had caught, and found that the cable had cut into it to the depth of two or three inches.

The plaintiff described the shive used on the train as being "a wheel with a grooved edge, that is put in an iron frame, which we use to keep the cable in line with the train, and when we go to work on a curve we fasten these shives to the opposite

side of the cars on the outside of the curve. The shive is after the pattern of a well pulley. It has·a groove in the wheel that will contain the cable, and is made especially for that purpose.''

It may be conceded that, but for the defective sill, the injury would not have resulted. The defendant, however, is not liable merely because the machinery was defective and its servant was thereby injured. If the cars were sufficient for the work they were supplied to perform, executed in the manner directed by the company, and the plaintiff put them to another use, or used them in a manner not in the fair and reasonable expectation of the defendant, and, in such use, injury resulted, the defendant is not liable, even though the defect in the car contributed thereto.

The principle from which the liability of the master to the servant springs, is that he owes to the servant a duty which in the particular case he has failed to discharge. For the work intended to be done in the manner it was contemplated by the defendant, or in which the plaintiff might reasonably have believed was so contemplated, it owed to the plaintiff the duty of supplying safe and suitable machinery, cars and appliances, and for injury sustained by neglect so to do, it would have been responsible. But, by the very character of the appliances supplied, it is evident that the strain of the cable against the cars between the engines and the plow, when in the progress of the work it became necessary to subject them thereto, was intended to be met and in part sustained by the shives. The iron frame in which the wheel was set distributed the strain along the side of the car, and the revolving wheel diminished the friction of the cable. The fact that these shives were supplied by the company, indicated in a manner not to be misunderstood that it was not expected that the stanchions were to be subjected to the strain of the mighty power necessary to force the plow along the cars. If the plaintiff, instead of using the shives while pulling the plow around a curve, had run the cable against

the stanchions, and by reason of this a defective sill had been stripped from the car, or the stanchions had pulled out the defective sill, and he had been injured, the nonliability of the . company would have been apparent, for the plaintiff, by departing from the directions of the company as to the manner of using the appliances, would have assumed all risk consequent to his action.

We are unable to perceive any principle upon which a different rule should be applied to the circumstances shown by the evidence. It is true the plaintiff did not know that the cable was hung on the submerged stump, but neither did the defendant, and unless it was negligence on its part to leave the stump on its right of way, which it was not, we see no failure of duty towards the plaintiff. He did what was not supposed to be a dangerous act—*i. e.*, attempted to take up the slack of the cable by moving the engine, leaving the end of the cable attached to the plow. Unexpectedly it was found that the cable was hung on the stump, and the result was that a great strain was put on the car, a strain it was not expected it should be subjected to, and in a manner totally different from that in which it was contemplated the strain incident to its service should be applied—*i. e.*, against the stanchions instead of through the shives. The misfortune, if not the fault, of the plaintiff was, that under circumstances not fully appreciated by him, in which it was possible or it may be probable that an unknown strain would be encountered, he used the car in a manner not intended to withstand the strain to which it was known the car would be subjected, and neglected to employ the appliances supplied to be used when the strain was encountered in the service for which the car was intended.

*Reversed and remanded.*